CHERIER ROBERGE *v.* TOWN OF TROY.

May Term, 1932.

Present: Powers, C. J., Slack, Moulton, Thompson, and Graham, JJ.

Opinion filed January 4, 1933.

*Walter H. Cleary* for the defendant.

*Pierce & Miles* for the plaintiff.

THOMPSON, J. The action is tort under G. L. 3945 to recover for the alleged neglect of Guy L. Armstrong as constable of the town of Troy to complete the attachment of certain personal property on a writ in favor of the plaintiff against one Isadore Boudro. Trial was by court, and judgment was rendered on the facts found and filed for the plaintiff. The defendant excepted.

██ ██ It was not error to deny the defendant's motion for judgment which was made at the close of the evidence, because it was inopportune. The case was one triable by jury, and, therefore, is controlled by G. L. 2259, which provides that when such a case is tried by court the facts found by the court upon which judgment is rendered shall be reduced to writing, be signed by a majority of the court, and be filed with the clerk; and that other or different facts at issue in a cause so tried, except such as relate to the admission or rejection of evidence, shall not be allowed in the bill of exceptions. *Conn Boston Co.* v. *Griswold,* 104 Vt. 89, 99, 157 Atl. 57; *Rathiel* v. *Hall,* 99 Vt. 65, 69, 130 Atl. 749; *Hooper, Trustee* v. *Kennedy,* 100 Vt. 376, 138 Atl. 778; *Francis* v. *London Guarantee & Accident Co.,* 100 Vt. 428, 130 Atl. 780; *Grapes* v. *Rocque,* 96 Vt. 286, 290, 119 Atl. 420. And this Court is restricted by the statute to the facts found and filed below. *Handy* v. *Trudell,* 104 Vt. 85, 87, 156 Atl. 902; *Powell* v. *Merrill,* 92 Vt. 124, 130, 103 Atl. 259; *Singer Mfg. Co.* v. *Nash,* 70 Vt. 434, 41 Atl. 429; *Wilson* v. *Barrows,* 96 Vt. 344, 119 Atl. 422; *Hall* v. *Simpson,* 63 Vt. 601, 22 Atl. 664.

It appears from the record that on September 29, 1930, the plaintiff instructed Armstrong, who was second constable of defendant town, to procure a writ against Boudro, who then lived on a farm in Irasburg, and, if he found no liens of record on the hay and other crops then on the farm, to serve the writ and to attach the hay, hogs, and all other property of Boudro which was free from lien as disclosed by the records in the town clerk's office in Irasburg; that Armstrong procured the writ, and on the same day, about 11 A.M., he attempted to make service thereof by attaching ten calves, seven hogs, and about one hundred tons of hay which "were on the farm of the said Boudro"; that such service was defective in that the constable "did not lodge a copy of his writ with the town clerk and took none of the property which he attempted to attach into his possession as required by statute."

It appears further that on the same day, and subsequently to the time of the attempted service, Boudro and his wife executed to the Orleans Trust Company a mortgage on eleven yearling heifers and on all hay, grain, and crops of every kind then on said farm, conditioned for the payment of a note for $542.44, payable on demand, and also conditioned for the payment of all other notes or demands that the Trust Company might hold against the Boudros or either of them; that this mortgage was lodged in the town clerk's office in Irasburg for record on the same day at 6 P.M.; that on September 29, 1930, there was on record in said town clerk's office an undischarged personal property mortgage of $38,500, executed May 4, 1929, from Isadore Boudro to the Orleans Trust Company.

The court found in finding 5:

> "That at the time of said attempted service the calves, hogs and hay which the said officer attempted to attach were on the farm of the said Boudro; that the hay amounted to about 100 tons, was of good quality, and worth $10 per ton; that there were seven hogs of the value of $100, and ten calves worth $80, none of which property was then covered by mortgage or other lien."

The defendant excepted to this finding on the ground that the uncontradicted testimony as to the quantity and value of

hay referred to the hay on the farm in Irasburg in September, 1931, and not to the hay there on September 29, 1930. There is no merit in this exception.

The case was heard on October 1, 1931. The plaintiff called four witnesses, none of whom were cross-examined by the defendant. The defendant did not introduce any evidence, and it rested its case when the plaintiff rested.

Isadore Boudro was the only witness who testified as to the quantity and value of the different kinds of property which Armstrong attempted to attach, and all of his testimony was about that property. He was asked, "On the 29th day of September last year did you have some hay on the farm?", and he replied, "Yes." He was then asked how many tons were there, and he replied, "About 100." After a few questions and answers which qualified him to testify of the value of the hay, he was asked, "And what was the value of that hay per ton that you had there in your barn last September?", and he replied, "Well, I should say right around $10."

The defendant contends that this last question and answer support its exception. Standing alone they might be so construed. We think, however, that the adjective "that" which precedes the noun "hay" in the question, referred to the hay which Armstrong attempted to attach, as that was the only hay about which the witness had testified. The question and answer are reasonably susceptible to that construction, and it was not error for the court to so construe them. *Resource Holding Corp.* v. *Schoff's Estate,* 105 Vt. 144, 163 Atl. 768.

The court found in finding No. 8 that prior to 6 P.M. on September 29, 1930, when the mortgage of that date from Boudro and his wife to the Orleans Trust Company was lodged with the town clerk of Irasburg for record, "there was no claim recorded in said town clerk's office in the town of Irasburg, where said property was located, upon the hay, hogs and calves attempted to be attached by said Armstrong."

The defendant excepted to this finding and finding No. 5 on the ground that they are not warranted by the evidence, because it appears from the undisputed evidence, as shown by Plaintiff's Exhibit 6, which is the chattel mortgage of $38,500, that the calves and hay on the farm at the time of the attempted service were mortgaged to the Trust Company.

The argument of the defendant is that since the mortgage of the Trust Company for $38,500 covered fifty tons of hay, more or less, and ten heifer calves, "and being the only property of like kind and nature on said land and premises," the plaintiff had the burden of proving that the hay and calves which Armstrong attempted to attach were other than the property covered by that mortgage; and that there is no evidence in the case to sustain that burden.

It does not appear from Plaintiff's Exhibit 6, which was executed on May 4, 1929, that the calves and hay covered by it were the identical calves and hay that Armstrong attempted to attach on September 29, 1930. The point now made by the defendant, that the burden was on the plaintiff to show that they were not, was not made below. The exception is not sustained.

The writ in the suit of the plaintiff against Boudro was entered in court on October 20, 1930, and was discontinued before the present suit was brought.

The defendant contends, in support of its exception to the judgment, that the plaintiff lost his right of action against it by discontinuing the Boudro suit without trial; that he should have obtained judgment in that suit and an execution should have been issued and a return of *nulla bona* made, because not till then could he ascertain whether the constable's neglect had caused him damage.

It quotes and relies upon a sentence in the opinion of the Court in *Briggs* v. *Taylor*, 35 Vt. 57, page 65. That case is not comparable to this one, and it does not support the contention of the defendant.

That was an action against the defendant as sheriff for the neglect of a deputy in the care of property attached by him on process against the plaintiff. The case was tried while the attachment suit was still pending. The question was whether the plaintiff as general owner of the property could maintain an action for the officer's neglect in the care thereof while the attachment was still in force. The Court, while discussing the question, used the language quoted by the defendant when saying that the attaching creditor could not tell whether the depreciation in the value of the attached property caused by the officer's neglect, was, or was not, an injury to him until his suit was perfected by judgment, the issuing of an execution, and its

levy on the property attached, because if the property was sufficient to satisfy the execution, he had not been injured.

This case, with the exception that the plaintiff did not obtain judgment against Boudro, is similar to *Hill* v. *Pratt,* 29 Vt. 119, and is controlled by it on the point that an execution should have been issued. That was an action against a sheriff for the neglect of his deputy in not attaching property as directed by the writ. It appeared that at the time the writ was served the debtor had attachable property, which fact the officer could have discovered in the exercise of reasonable diligence; but at the time of the judgment in that suit the debtor had become insolvent and the debt valueless. The Court, when holding that it was not necessary that an execution should have been issued, said: ''We think the court was correct, also, in holding that it was not necessary to issue an execution on the judgment and deliver it to the officer within thirty days after its rendition. This is not a case in which the officer is charged with a neglect of duty in not keeping property attached to be applied on an execution, but the ground of complaint is the neglect of the officer in not making any attachment of property whatever.''

It is not necessary for the maintenance of this suit that the plaintiff should have obtained judgment in his suit against Boudro because the record of such a judgment would not have been admissible against the defendant either as to the plaintiff's right of action against Boudro, or the amount of his damages. Such a judgment would have been conclusive of such facts against the plaintiff and Boudro, but it would not have had such effect on the defendant who was not a party or privy thereto, and who would have had no opportunity to controvert the facts which would have to be proved to entitle the plaintiff to a judgment. *Bramble* v. *Town of Poultney,* 11 Vt. 208; *Ballentine* v. *Fenn,* 84 Vt. 117, 78 Atl. 713, 40 L. R. A. (N. S.) 698.

 The plaintiff's cause of action arose on September 29, 1930, when Armstrong failed to attach the hay on Boudro's farm, and, by reason of that neglect, the Orleans Trust Company obtained priority over the plaintiff by its mortgage of that date on the hay; and he can recover such actual damages as he sustained by reason of Armstrong's negligence, or nominal damages in any event. It is not necessary to discuss this question as it was considered fully, and decided, in *Johnson* v. *Beattie,* 88 Vt. 512, 93 Atl. 250, L. R. A. 1915D, 1163.

In the early cases, *Turner* v. *Lowry,* 2 Aik. 72, and *Hall* v. *Brooks,* 8 Vt. 485, 30 A. D. 485, it was held that an officer subjects himself in this form of action for the whole amount of an execution if he suffered the same to run out in his hands; and he was not permitted to give in evidence the insolvency of the debtor in mitigation of damages. This was a harsh rule. It was modified in *Kidder* v. *Barker,* 18 Vt. 454, and since that case it has been the rule that the defendant in such cases may show the insolvency of the debtor or other material facts that reduce the damages recoverable to nominal damages or the actual damages suffered. *Goodrich* v. *Starr,* 18 Vt. 227; *Ives* v. *Strong,* 19 Vt. 546. See, also, *Watkinson* v. *Town of Bennington,* 12 Vt. 404.

*Blodgett* v. *Town of Brattleboro,* 30 Vt. 579, was an action for the neglect of defendant's constable to serve a body writ on one Hall. It was held that on the facts of the case the plaintiff could recover nominal damages only.

Judge Poland, speaking for the Court, said: "The bearing of the courts in this state, as well as in others, has been not to hold sheriffs or other officers of that class, liable for damages for any neglect of duty, unless the same was gross and wilful, beyond a fair compensation to the party for his actual loss; and several recent cases have held this to be the rule, where formerly the plaintiff would probably have been allowed to recover the full amount of his debt.''

In all of the cases where the plaintiff recovered only nominal damages or damages less than the full amount of his debt, the defendant assumed the burden of proving the facts that mitigated the damages; and we think that, as to such facts, the burden of proof, in the sense of producing evidence, is upon the defendant.

The court found that the plaintiff's debt was $868 when he brought suit against Boudro; that there was a payment of $99.46 made later which reduced the debt to $768.54; and that the plaintiff should have judgment for that amount with interest from September 29, 1930. No exception was taken to this finding, so far as it found the amount of the damages; and the defendant has not introduced any evidence that would reduce these damages.

It appears that the hogs and calves, of a total value of $180, were not covered by the mortgage taken by the Orleans Trust Company on September 29, 1930. The defendant claims

that since there is no finding that the hogs and calves were not on the Boudro farm to respond to any judgment which the plaintiff might have recovered against Boudro, the judgment should have been reduced by the amount of the value of such animals. This question is not before us, as it does not appear that it was raised below.

The court found that the plaintiff's suit against Boudro was for a balance alleged to be due on a certain land contract which the plaintiff and his wife, Alexandria Roberge, entered into on June 18, 1926, with Boudro, in which Boudro engaged to purchase eighty acres of land in Troy and to pay $2,000 for the same, with interest annually, in certain installments, and also to pay the taxes thereon; and, upon the payment of the purchase price, interest, and taxes, the said Roberges would convey said property to Boudro by warranty deed. The court found that Alexandria Roberge died prior to September 29, 1930.

The defendant excepted to this finding on the ground that it was not warranted by any evidence in the case, as the undisputed evidence, as shown by Plaintiff's Exhibit 1, is that the contract, though executed by the plaintiff and his wife, was between Alexandria Roberge and Isadore Boudro, that the land belonged to her, and the note secured by the land contract was payable to her.

■ Plaintiff's Exhibit 1 is the land contract referred to. It appears from this instrument that the land, which is the subject of the contract, was owned by Alexandria Roberge, but was not held to her sole and separate use. The plaintiff, therefore, had a freehold interest in such land (*City of Barre* v. *Town of Bethel*, 102 Vt. 22, 27, 145 Atl. 410), and he was a necessary party to a valid contract for the sale of it.

The first paragraph of the contract provides: "This agreement made and concluded * * * by and between Alexandria Roberge * * * of the first part and Isadore Boudro * * * of the second part, Witnesseth; That said Alexandria Roberge and her husband, Cherrier Roberge, in the consideration hereinafter mentioned, have this day sold to said Boudro the following described land and premises:" etc. It is provided, that, if Boudro fails to perform his agreements, "the said Alexandria Roberge and her husband, Cherrier Roberge, shall have the right to reenter upon said premises and eject the said Boudro"; if

Boudro pays the purchase price within two years, then ''the said Alexandria Roberge and Cherrier Roberge shall deduct $200 from the purchase price''; * * * ''when the notes described in the contract are paid in full the said Alexandria Roberge and her husband Cherrier Roberge,'' are to convey the premises to Boudro by warranty deed. The contract is executed under seal and acknowledged by the plaintiff, his wife, and Boudro.

██ ██ The defendant relies upon the first sentence of the contract in support of its claim that it was a contract between Mrs. Cherrier, alone, and Boudro. But when all of the provisions of the contract are read together, as they must be, in the light of the fact that the plaintiff was a necessary party thereto to make it valid, the reasonable construction of it is that the plaintiff was a party to the contract, and that it was the joint contract of himself and his wife. When she died, the right of action upon the contract passed to the plaintiff as surviving promisee. 1 R. C. L. 37; 47 C. J. 55; 1 Mass. 104.

It is provided in the contract that Boudro should give his note for the unpaid balance of the purchase price to Mrs. Cherrier. The defendant excepted to the failure of the court to find that such note was payable to Mrs. Cherrier and not to the defendant. This exception is not sustained because there is no evidence that such note was ever executed.

██ ██ The defendant states as a ground of exception to the judgment, that the only evidence in the case is that the property which Armstrong attempted to attach belonged to Boudro and his wife. This question cannot be raised by an exception to the judgment. The only question raised by such an exception is whether the judgment is supported by the findings.

Other questions which have been briefed have not been given special consideration for the reasons that they are either disposed of by what we have said or they were not raised below.

There was no error in the trial below.

*Judgment affirmed.*