MOSES MCFARLAND v. S. L. WILBUR AND H. N. LEACH.

*Scire facias. Bail on Mesne Process. Arrest. Soldiers.*

In *scire facias* against bail on *mesne process, held* to be a good plea on general demurrer, that the plaintiff promised the bail before the return day of the writ in the original action, that if they would cause their principal to attend the trial of the cause against him, they should be discharged as bail, and that, in reliance upon such promise, they did procure him to attend at such trial.

In *scire facias* against the bail of one arrested on *mesne process* in a civil action, *held,* that the defendants were discharged from liability by the fact that their principal had, during the pendency of the action against him, caused himself to be enrolled as a soldier for service under the government of the United States, and had ever since continued under orders for service under the authority of the United States.

The act of 1861, (Acts of extra session of 1861, No. 8, p. 186,) which was passed subsequent to the arrest of the principal in such case upon *mesne process,* having conferred upon him a privilege from arrest, his surrender by his bail would have been of no use to the creditor, and the bail are therefore not liable in *scire facias* for not surrendering him.

SCIRE FACIAS against the defendant as bail on *mesne process* for one Elbridge Wilbur, who was arrested on the 1st of April, 1861, upon a writ in the plaintiff's favor against him, in an action on the case, returnable before a justice of the peace, upon which writ the defendants, on the day of Wilbur's arrest, endorsed their names as his bail. The declaration duly set forth the arrest of Elbridge Wilbur on such writ, and the act of the defendants in becoming his bail, the rendition of a judgment in favor of the plaintiff in such action, both by the justice of the peace and by the county court to which Elbridge Wilbur carried the case by appeal, the issue of an execution upon such judgment of the county court, and its seasonable delivery to an officer, and the making of a *non est inventus* return thereon by the officer.

The defendant pleaded seven pleas, the first five of which set forth substantially, but each in slightly variant terms, that after they became bail for Elbridge Wilbur, and before the return day of the writ, the plaintiff promised, in consideration that the

McFarland *v.* Wilbur et al.

defendants would forbear to take and secure the body of Elbridge Wilbur, for the purpose of surrendering him at the justice court in discharge of themselves as bail, and would cause said Elbridge to appear personally and attend such court, that such acts should be a full discharge of the defendants' liability as bail for Elbridge Wilbur; and also that the defendants, relying on the plaintiff's promise, forbore to take and secure the body of said Elbridge for the purpose of surrendering him at the justice court, and that they caused him to appear at the trial of the cause before the justice.

The sixth and seventh pleas alleged substantially, that during the pendency of the plaintiff's action against Elbridge Wilbur, viz., on the 20th of May, 1861, the said Elbridge Wilbur enrolled himself as one of the volunteer militia of the state of Vermont, for service under the government of the United States, and that ever since that time he had been under orders for service under the authority of the United States, and therefore privileged from arrest and imprisonment upon civil process.

To all these pleas the plaintiff demurred generally.

The county court, at the May Term, 1862, PIERPOINT, J., presiding, adjudged the pleas insufficient, and rendered judgment for the plaintiff, to which the defendants excepted.

*G. W. Hendee* and *L. F. Wilbur,* for the defendants.

*Powers & Gleed,* for the plaintiff.

POLAND, CH. J. The first five pleas of the defendants allege in substance, that after they became bail for Elbridge Wilbur, and before the return day of the writ, in consideration that the defendants would forbear to take and secure the body of the said Elbridge Wilbur, for the purpose of surrendering him at the justice court, in discharge of themselves as bail, and would cause the said Elbridge to appear personally and attend said court, the plaintiff promised that such acts should be a full discharge of their liability as bail for the said Elbridge ; and the pleas allege that relying on the plaintiff's promise, the defendants did forbear to take and secure the body of the said

Elbridge, for the purpose of surrendering him at the said justice court, and that they did cause the said Elbridge Wilbur to appear at the hearing and trial of the plaintiff's suit before the justice.

It is not alleged in these pleas that the defendants had procured a bail piece, upon which to take the said Elbridge, or that they designed, or were about, to procure one, or that they were entitled to one ; nor is it alleged that they had taken, or intended to take, the said Elbridge into custody, for the purpose of surrendering him at the justice court. All this must be inferred, (if found at all in the pleas,) from the allegation that the defendants forbore to take him into custody for the purpose of surrendering him, relying upon the plaintiff's promise. In *Van Ness* v. *Fairchild*, 1 D. Chip. 163, a plea of a similar character was held defective, for want of the special and particular averments, which are wanting in these pleas.

We have not found it necessary in this case to examine critically, whether the want of these averments in terms, can be supplied by inference from what is alleged, so as to render them sufficient against a general demurrer.

The pleas allege as one consideration for the plaintiff's promise to release the defendants as bail, that the defendants would cause the said Elbridge Wilbur, their principal, to attend the trial of the plaintiff's case before the justice, and that the defendants did cause him to attend. This clearly was an undertaking to which they were not bound by becoming bail for him upon the plaintiff's writ. Their liability as bail was merely that their principal should remain within the precinct of the proper officer, so that he could be taken, when wanted upon the plaintiff's execution.

His failure to attend the trial, and allowing the plaintiff to take a judgment against him by default, fixes the bail with no liability, provided he remains within reach of the plaintiff's execution. It might be a benefit to the plaintiff to have the defendant present at the trial ; he might desire his testimony to establish his cause of action, or to show the extent of his damages, or to show that the cause of action was of a nature to entitle him to a certified execution. It might be an inconven-

ience and damage to the defendants to procure the attendance of their principal at the justice court; at any rate, it was an act they were under no obligation to perform, and if, in consideration of the defendants' undertaking, and performing it, the plaintiff promised to discharge them from their liability as bail, we think it was a valid and sufficient consideration.

Upon this ground, we are of opinion that these pleas show a good answer to the plaintiff's declaration.

The sixth and seventh pleas of the defendants present a question of more general importance.

These pleas allege, that while the plaintiff's action was pending against Elbridge Wilbur, to wit, on the 20th day of May, 1861, the said Elbridge Wilbur was enrolled as one of the volunteer militia in the state of Vermont, for service under the government of the United States, and that ever since the said 20th day of May, 1861, the said Elbridge Wilbur has been under orders for service under the authority of the United States, and therefore privileged from arrest and imprisonment upon civil process.

It has not been questioned by the plaintiff's counsel, and we think can not be successfully, that the act of the extra session of 1861 extends to a case like this, and that if the plaintiff had taken the body of Elbridge Wilbur in execution, he would have been entitled to an immediate discharge, even though previously held to bail upon the writ.

But the plaintiff insists, that this furnishes no defence to the bail in this action against them; that if they could have been relieved at all, it was only by an application in the original action, and that having neglected to make it there, they must now either produce the body of the principal, or pay the plaintiff's judgment.

The plaintiff relies entirely upon two cases in Massachusetts, *Sayward* v. *Conant*, 11 Mass. 146, and *Harrington* v. *Dennie*, 13 Mass. 92, to support this proposition.

In the former case, no reasons are given for the decision, but in the latter the opinion was given by Chief Justice PARKER.

It was distinctly held, however, in both cases, that a voluntary enlistment of the principal into the service of the United States, after his arrest, and before the bail became fixed, was no defence to a *scire facias* against the bail.

The case is put distinctly upon the ground, that the principal could not by his own voluntary act, put himself in a position to deprive the plaintiff of the benefit of the bail contract, either against himself or his surety.

The general principle seems to be fully recognized, that whatever would render the arrest unlawful, or insufficient by operation of law, would operate to discharge the bail ; and that it might be shown by the bail as a defence to the *scire facias.* There is certainly some show of reason in saying that a man who has been arrested and given bail, shall not by his own voluntary act deprive the plaintiff of the security he has thus obtained.

But to hold that he may by his own voluntary act deprive the plaintiff of any right to arrest and imprison him, and that this furnishes no reason for absolving his bail, (who had no knowledge of, and gave no assent to, his enlistment,) from the penalty of the contract, for not producing the principal to be arrested and imprisoned upon the execution, seems not only unjust but absurd. The Massachusetts court seem not to have fallen into this dilemma, for by a note to *Harrington* v. *Dennie,* it appears that after the court decided that these facts furnished no defence to the bail, he surrendered the principal, who moved to be discharged from custody, and the court refused to discharge him.

It does not appear from the case upon what ground the court refused to discharge, but it is quite clear that if the principal was not entitled to be discharged, when surrendered, the same facts could not furnish a defence to the bail for not surrendering him.

The principle seems now to be quite generally settled, both in England and in the American States, that bail need not surrender their principal, when such surrender would be useless to the creditor, because he can not proceed to enforce his

McFarland *v.* Wilbur et al.

claim by the imprisonment of the principal. This has been fully adopted in this state, by the cases of *Aiken* v. *Richardson*, 15 Vt. 500, and *Belknap* v. *Davis*, 21 Vt. 409. In the former of these cases, ROYCE, CH. J., says : " Courts are at liberty to consider the effect of surrendering the principal, and, if they perceive that it could be of no benefit to the creditor, they will not require it, but release the bail. This happens when the surrender can not legally be followed by further proceedings against the body of the principal." He cites a large number of cases, both English and American, in support of the position.

There has been some conflict in the rule of practice, as to when, and how, the bail must take advantage of such defence, whether by application, in the original action, to be discharged, or by way of defence to a *scire facias.* In England it has been required to be by application in the original suit, where the arrest was legal in the outset ; and this rule has been followed in some of the states.

But in this state, as in Massachusetts and some others, it is now settled, that wherever the bail are entitled to be discharged in the original action, the same facts may be pleaded as a bar to a *scire facias.* See *Aiken* v. *Richardson*, and *Belknap* v. *Davis, ubi supra.*

The case of *Robinson* v. *Patterson*, 7 East 405, seems quite in point to the present action. That was an application to have an *exoneratur* entered as to the defendant's bail, on the ground that after arrest, and giving bail, and before the bail were fixed, the defendant was impressed into his Majesty's service as a seaman, and as such was not liable to arrest on the plaintiff's debt. The plaintiff answered this, by showing that after the defendant's impressment, he agreed to enter the service, and accepted a bounty as a volunteer. The court in the first place refused to grant a *habeas corpus* to enable the bail to bring in the body of the defendant to surrender him, but ordered an *exoneratur* of the bail to be entered, as the surrender of the principal would be of no avail to the plaintiff, as the defendant would be entitled to an immediate discharge, if surrendered.

In this class of cases, in whatever form they have arisen, it has generally been said, that if the surrender of the principal become impossible by act of God, or unlawful by statute, or by operation of law, it will entitle the bail to a discharge, or be a defence to the bail when sued, according as the rules of different courts have allowed the defence to be made.

Among the cases where it has been held that the surrender of the principal has become impossible by operation of law, so as to excuse the bail from making a surrender, are those where the principal has been convicted and transported for felony; where the principal has been made a peer, or been elected a member of the House of Commons. It is difficult to see in these cases, why the exemption of the principal from arrest, does not arise more from the voluntary act of the principal, than by operation of law.

So too, it has been everywhere held, that a discharge of the principal, under the bankrupt law, is a good defence for his bail. This was decided in this state in *Belknap* v. *Davis*, before cited. In a case of voluntary bankruptcy, under a bankrupt law, like the latest one in this country, it is not apparent, why such discharge does not arise from the voluntary act of the bankrupt himself. Yet in all these cases, this consideration has not been deemed sufficient to deprive the bail of the defence.

It is worthy of notice, that the act of the extra session, under which the arrest and imprisonment of volunteers in the militia in the United States service, on civil process, was prohibited, was passed after the bail contract was entered into by the defendants, and before the plaintiff obtained his judgment, and issued his execution. In this respect the case differs from those in Massachusetts. If this makes no real difference between them, we think those cases are not supported by sound principle, and we can not follow them.

It seems to us that the whole question hinges upon this: if the defendants had surrendered their principal, could the plaintiff legally have held his body till he satisfied his debt, or would he have been entitled to an immediate discharge, so that such surrender would have been wholly unavailing to the creditor?

McFarland *v.* Wilbur et al.

As before stated, the plaintiff does not claim he could legally have held the body of the principal, if surrendered to be taken in execution by him, and any other construction would render the act of the legislature a mere nullity. We are therefore of opinion that these pleas also furnish a good answer to the plaintiff's suit.

The judgment of the county court is therefore reversed, and judgment rendered for the defendants.