MARY S. STEELMAN v. NATHAN P. MATTIX ET AL.

1. Bail are entitled to relief when the surrender of the principal is made impossible by the act of the law, where the plaintiff loses nothing by the omission of any act which it is in the power of the bail to perform.
2. Whether relief will be granted by bringing up the principal on *habeas corpus*, or by extending the time for surrender, or by granting a discharge on motion, will depend upon the fact whether the one mode will be more beneficial to the plaintiff than the other.
3. The defendant, M., gave bond under the insolvent laws, conditioned that he would surrender himself to the sheriff of Atlantic county if his discharge as an insolvent was refused. At the time his discharge was refused, he was in the county jail of said county, prior to his removal to the state prison, to which he had been sentenced for crime. *Held* —that this did not excuse an actual surrender of M. to the sheriff. He could have said to the sheriff that he put himself into his custody according to the condition of the insolvent bond, and this would have enabled the sheriff to retake him after he had been liberated from incarceration on the criminal charge.

On rule to show cause.

Argued at June Term, 1875, before the CHIEF JUSTICE, and Justices DEPUE and VAN SYCKEL.

For the plaintiff, *W. E. Potter.*

For the defendants. *A. C. Scovel* and *P. L. Voorhees.*

The opinion of the court was delivered by

VAN SYCKEL, J.   This suit is upon a bond executed by the defendants under the insolvent laws of this state, conditioned that the defendant, Mattix, would appear and apply for the benefit of the insolvent laws of this state, and if he was refused his discharge as an insolvent debtor, that he would surrender himself to the custody of the sheriff of the county of Atlantic.

The breach assigned is, that Mattix was refused his discharge, and that he did not surrender himself. The defendants, on the trial of the cause, admitted that the discharge was refused, and offered to show in excuse that the surrender was rendered impossible by act of law; that, at the time the discharge was refused, Mattix was incarcerated in the county jail of Atlantic county, prior to his removal to the state prison, to which he had been sentenced for a term of years for the crime of rape.

The question in the case is, whether this was a lawful excuse for the failure to make an actual surrender of the principal to the bond?

Cases of special bail are chiefly relied upon to support the defendants' case.

In the case of *Peter Vergen's Bail,* 2 *Str.* 1217, the principal having been convicted of felony, was brought up by *habeas corpus,* and surrendered in discharge of his bail in a civil action.

The same practice was adopted in *Sharp* v. *Sheriff,* 7 *Term R.* 226, where the principal was committed to prison on a charge of murder.

In *Trinder* v. *Shirley,* 1 *Doug.* 45, the principal having become a peer by succession to his brother, and it therefore being no longer in the power of the bail to surrender him, the court ordered an *exoneretur* to be entered on the bail piece. In *Wood* v. *Mitchell,* 6 *Term R.* 247, and in *Robertson* v. *Patterson,* 7 *East* 405, an *exoneretur* was entered on the bail piece in the first instance, without bringing up the principal on *habeas corpus.* In the former case the defendant was under sentence of transportation for felony, and in the latter he was impressed into the king's service.

The same rule prevails in New York when the defendant has been sentenced for felony *Cathcart* v. *Cannon,* 1 *Johns. Cases* 28; *Loflin* v. *Fowler,* 18 *Johns.* 335; *People* v. *Bartlett,* 3 *Hill* 570.

A distinction was made in *Brignell* v. *Forrest,* 2 *Johns.* 482, where the defendant was detained in prison on a charge

of felony before conviction, and a *habeas corpus* was granted to produce the body of the prisoner, that he might be surrendered in discharge of the bail.

In *Parker* v. *Chandler*, 8 *Mass.* 264, the court said that nothing but the act of God would excuse the bail, but this case was overruled by *Begelow* v. *Johnson*, 16 *Mass.* 218, and *Way* v. *Wright*, 5 *Metc.* 380. In the latter case the discharge was granted, on motion, without bringing the defendant into court by *habeas corpus.* The cases almost uniformly recognized the rule, that where the condition of a bond or recognizance becomes impossible of performance by the act of God, or of the law, or of the obligee, the obligation is saved. *People* v. *Manning*, 8 *Cowen* 297; *Taylor* v. *Taintor*, 16 *Wall.* 366; *Hillyard* v. *Mutual Ben. Ins. Co.*, 6 *Vroom* 415.

The rule is thus stated in 1 *Tidd's Pr.* 293: "Whenever, by act of the law, a total impossibility or temporary impracticability to render a defendant has been occasioned, the court will relieve the bail from the unforeseen consequences of having become bound for a party whose condition has been so changed by operation at law, as to put it out of their power to perform the alternative of their obligation without any default, laches or possible collusion on their part."

There is no doubt that the bail are entitled to relief when the surrender is made impossible by the act of the law, where the plaintiff loses nothing by the omission of any act which it is in the power of the bail to perform; the governing principle being that as the power of making the surrender is taken away by an act of law, the obligation to surrender is thereupon discharged by law, as the surety cannot, by law, surrender his principal; he cannot, by law, be held answerable for not surrendering.

That the inability to surrender must flow wholly from the act of the law, and have no contribution from the neglect or omission of the contracting party, is illustrated by the case of *Taylor* v. *Taintor, supra.*

In that case the bail entered into recognizance for the appearance of the principal to answer to a criminal charge,

and afterwards suffered him to go into another state, and while there he was delivered up on the requisition of the governor of a third state, and there imprisoned for crime. Mr. Justice Swayne, in delivering the opinion of the court, said, that if the principal had been arrested in the state where the obligation was given, and sent out by the governor, the bail would be exonerated; but the bail having the principal delivered into their custody, with full power to take and deliver him up at any time, must bear the loss which ensued from their permitting him to go beyond the limits of their state, where he was seized by a law not operative in the state where the obligation was assumed.

Whether relief will be granted to the bail by bringing up the principal on *habeas corpus*, or by extending the time for surrender, or by granting a discharge on motion, or by pleading in excuse to an action against the bail, is the subject of discussion in cases hereafter cited. Whether the defendant shall adopt the one or the other of these modes of relief, I think, should be held to depend upon the fact whether the one will be more beneficial to the plaintiff than the other.

In *Aiken* v. *Richardson*, 15 *Vt.* 505, Royce, Justice, says: "That courts are at liberty to consider the effect of surrendering the principal, and if they perceive that it could be of no benefit to the creditor, they will not require it, but release the bail. This happens when the surrender cannot legally be followed by further proceedings against the body of the principal."

To the same effect is the language of Chief Justice Poland in *McFarland* v. *Wilbur*, 35 *Vt.* 347: "It seems to us that the whole question hinges upon this: If the defendants had surrendered their principal, could the plaintiff have held his body till he satisfied his debt, or would he have been entitled to an immediate discharge, so that such surrender would have been wholly unavailing to the creditor?"

In cases where the bail are entitled to be discharged *ex debito justitiæ*, it has been held that they may apply for an *exoneretur* by way of summary proceeding, or plead the mat-

ter as a bar to a suit against them. This rule has been applied to that class of cases where the principal, if surrendered, would be entitled to an immediate and unconditional release from custody, as in case of a person discharged in bankruptcy proceedings, or where he dies before the bail is fixed, or is imprisoned by the state's authority, so that a *habeas corpus* will not be granted for the purpose of making an actual render. *Beers* v. *Haughton*, 9 *Pet.* 329; *People* v. *Manning*, 8 *Cow.* 297; *People* v. *Bartlett*, 3 *Hill* 570; *Olcott* v. *Lilly*, 4 *Johns.* 407; *Mannin* v. *Partridge*, 14 *East* 599; *Hulshizer* v. *Kocker*, *Spencer* 390.

The rule being well settled, that where a performance of a condition is rendered impossible by the act of the law, the obligors are discharged, where there is no omission on their part to do any act which could avail the other party; the only question in this case is, whether the offer of proof made by the defendants brought them within the operation of this rule?

Mattix was not in the custody of his sureties; they stipulated unconditionally for his surrender of himself, if his discharge as an insolvent was refused. The case differs from that of a recognizance to appear and answer to a criminal charge, and from special bail in civil cases. In the former case, when the term of imprisonment had expired, the principal could be re-arrested on criminal process, and in the latter a *ca. sa.* could issue after the penalty for the crime had been borne. But in the case of an insolvent debtor, released on bond under our statute, no mode is provided for his re-arrest after he is discharged from actual imprisonment. The bond is the creditor's only means of returning the debtor to custody, if a discharge is refused; it can be effected only by his voluntary act in performance of his engagement, and, therefore, if the sureties are released the creditor would be remediless.

The defendants, therefore, should not be shielded by the rule of law which they have invoked, unless they show that the act of the law put it without the power of Mattix to save

the plaintiff the protection which the insolvent bond was designed to give her.

It required no rule of court to surrender Mattix; when the discharge was refused his obligation was simply to surrender himself to the sheriff. *Woodruff* v. *Barrett*, 3 *Green* 40; *Voorhees* v. *Thorn*, 1 *Zab.* 77.

If Mattix had died before the term of court next after the execution of his bond, his sureties would not have been liable on the bond; whether if he had been incarcerated in the state prison at the time his discharge as an insolvent was refused, so that he could not by any action on his part have been given into the custody of the sheriff of Atlantic county, he would have been bound to surrender himself, when he was discharged from confinement, need not now be considered. In this case, at the very time he was refused his discharge, he was in the custody of the sheriff at the county jail, on the criminal charge, and it was in his power to say to the sheriff, that he put himself into his custody, also, according to the condition of the insolvent bond, in exoneration of his sureties. That would have been an actual surrender in compliance with his undertaking, not at all inconsistent with the fact that he was already held under the criminal charge, and it would have enabled the sheriff to re-take him after he had been liberated from incarceration for the criminal offence. For want of such voluntary surrender, neither the sheriff nor the plaintiff could re-take him after the expiration of his term of imprisonment. The surrender, therefore, was not rendered impossible by the act or operation of law, and the sureties are not released from their stipulation that Mattix should make it.

The court below properly refused to permit the defendants so to amend their pleas as to set up this defence.

The rule to show cause should be discharged.